FILED

March 12, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:04 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Sheila Owens, | ) | Docket No. 2017-01-0401 |
|     Employee, | ) | |
| v. | ) | |
| Sitters, Etc., | ) | State File No. 44323-2015 |
|     Employer, | ) | |
| And | ) | |
| Bridgefield Casualty Ins. Co., | ) | Judge Audrey Headrick |
|     Carrier. | ) | |

## EXPEDITED HEARING ORDER
## (DECISION ON THE RECORD)

This matter came before the Court on Sheila Owens' Request for Expedited Hearing filed November 7, 2017.[1] Sitters, Etc. did not request an evidentiary hearing. The Court issued a docketing notice on February 9, 2018, listing the documents for consideration. The central legal issue is whether Ms. Owens is likely to establish at a hearing on the merits that she is entitled to medical treatment for her cervical condition. This Court finds it needs no additional information to determine this issue and holds Ms. Owens is entitled to the requested benefit at this time.

### History of Claim

Ms. Owens, a nursing assistant for Sitters, injured her left shoulder and back on June 9, 2015, when she caught a falling client. She received authorized treatment at Parkridge Hospital and Physicians Care. Following conservative treatment, Physicians Care referred Ms. Owens to see Dr. Rickey Hutcheson, an orthopedic surgeon, for her back. Ms. Owens disclosed to Dr. Hutcheson that she was in pain management due to prior cervical surgeries. Dr. Hutcheson testified he did not examine Ms. Owens' neck,

---

[1] The Order on Show Cause Hearing and Order Granting Employer's Motion for Extension of Time discuss the circumstances surrounding the delays in moving the Request for Expedited Hearing forward.

1

and she made no complaints regarding her neck. Sitters, Etc. only authorized Dr. Hutcheson to treat her back.

For Ms. Owens' shoulder, she selected Dr. Robert Mastey from a panel of orthopedic surgeons. The records reflected that Dr. Mastey's former partner, Dr. Craig Humphreys, performed Ms. Owens' prior cervical surgeries. Dr. Mastey indicated he frequently discussed Ms. Owens' neck pain with her due to the interplay between the neck and the shoulder. Since Dr. Mastey believed most of her pain stemmed from her cervical condition, he only provided conservative treatment of her left shoulder rotator cuff tear.

While treating with Dr. Mastey, Ms. Owens simultaneously sought unauthorized treatment with Dr. Richard Pearce, a board-certified orthopedic surgeon who took over Dr. Humphreys' practice. The records stated that Ms. Owens saw Dr. Pearce upon referral by her primary care physician. Dr. Pearce received authorization to treat Ms. Owens from the carrier for her prior, work-related cervical injury.

Dr. Pearce's office ordered diagnostic testing due to Ms. Owens's neck pain, including radiculopathy into both upper extremities with numbness and tingling. Based on the test results, Dr. Pearce determined that a C3-4 spinal cord compression caused her symptoms and recommended an anterior cervical discectomy, decompression, and fusion. Dr. Pearce indicated that Ms. Owens might develop permanent neurologic problems if the cord compression continued or worsened. Further, Dr. Pearce answered "yes" when asked if the need for surgery was "[c]aused by the old condition being aggravated by the new [June 9, 2015] injury." (Ex. 10.)

Dr. Pearce related the cause of Ms. Owens' current cervical condition to the work injury. He testified that, "Based on the history that she gave to me as far as onset of symptoms and the anatomic findings at C3-4 being obviously a level not previously operated on, I would relate it as to [the June 9] event." (Ex. 7.) Dr. Pearce compared Ms. Owens' diagnostic testing from 2012 to 2016, and stated, "The amount of cord compression and the size of that disc herniation [at C3-4] was obviously much worse." *Id.* He also discussed the timing of the anatomic change, admitting, "And at what point that [change] occurred between the last MRI of 2012 versus 2016 I cannot say except, based on her history, that she started having symptoms, and now we have a new MRI which shows a definite anatomic change." *Id.* Dr. Pearce acknowledged Ms. Owens' April 27, 2012 cervical MRI report referenced a "[m]otor vehicle accident" in the history section.[2] Even after reviewing the 2012 MRI, Dr. Pearce reiterated that Ms. Owens' June 9, 2015 injury proximally caused her condition at C3-4.

---

[2] Ms. Owens testified she sustained whiplash due to the motor vehicle accident in 2012.

Dr. Mastey, the authorized physician for Ms. Owens' shoulder, offered no opinion as to the cause of Ms. Owens' cervical complaints. Instead, Dr. Mastey deferred to Dr. Pearce, whom he believed was in the best position to address causation. After reviewing Dr. Pearce's causation opinion, Dr. Mastey again deferred to him and stated he had "no reason to disagree with Dr. Pearce." (Ex. 6.) Dr. Mastey also confirmed that Ms. Owens had not returned to his clinic for cervical treatment since she last treated with Dr. Humphreys, his former partner, approximately eight to ten years ago.

After Ms. Owens notified Sitters about her cervical condition, it sent her to Dr. Jay Jolley, a board-certified orthopedic surgeon, for an independent medical evaluation (IME). He acknowledged that on June 9, 2015, "there could've been some aggravation of the pre-existing degeneration." (Ex. 8.) Dr. Jolley initially determined that Ms. Owens' "overwhelming degeneration and arthritis at [C3-4] [caused] her significant pain and [was] more responsible [for the recommended surgery] than the incident." *Id.* He explained that, "her degeneration at C3-4 [was] not injury related." *Id.* However, Dr. Jolley later agreed with Dr. Pearce's causation opinion.[3] *Id.*

Ms. Owens asked the Court to order Sitters to authorize Dr. Pearce to perform the recommended cervical surgery. She contended that Dr. Mastey deferred to Dr. Pearce's opinion regarding causation and surgery, and Dr. Jolley agreed with Dr. Pearce's opinion.

Sitters countered that Dr. Pearce based his opinions on false and/or incomplete information, making it unreliable. It also contended that Dr. Pearce's testimony failed to rebut the presumption of correctness afforded the opinions of Drs. Mastey and Hutcheson, who concluded Ms. Owens did not sustain a work-related cervical injury.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Ms. Owens need not prove every element of her claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Applying these principles to the facts of this case, the Court finds that Ms. Owens is likely to prevail at a hearing on the merits.

---

[3] Dr. Pearce marked "yes" when asked if the surgery he recommended was "[c]aused by the old condition being aggravated by the new [June 9, 2015] injury."

Ms. Owens requested that the Court order Sitters order additional medical treatment with her own physician, Dr. Pearce. To grant her request, Ms. Owens must show, to a reasonable degree of medical certainty, that the work incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* A physician is not required "to use particular words or phrases included in the statutory definition of 'injury' to establish the requisite medical proof to succeed at trial." *Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017). However, sufficient proof is necessary "from which the trial court can conclude that the statutory requirements of an injury . . . are satisfied." *Id.* Further, as the treating physicians, the presumption of correctness on the issue of causation attaches to Drs. Hutcheson and Mastey. *Engler v. Able Moving Co.*, No. W2016-02125-SC-R3-WC, 2017 Tenn. LEXIS 713, at *11-14 (Tenn. Workers' Comp. Panel Oct. 30, 2017).

Here, Ms. Owens' authorized treating physicians did not render an opinion on causation of her cervical condition. Dr. Mastey, who treated Ms. Owens' shoulder, had no opinion regarding causation of her cervical condition and deferred the issue of causation to Dr. Pearce. Likewise, Dr. Hutcheson, who treated Ms. Owens' back, expressed no opinion on this issue. However, Dr. Pearce, who recommended surgery at C3-4, testified that the June 9, 2015 injury aggravated Ms. Owens' pre-existing cervical condition necessitating surgery. Dr. Jolley, who performed Sitters' IME, agreed with Dr. Pearce's opinion. Therefore, the Court holds that Ms. Owens provided sufficient evidence of her entitlement to medical benefits for her cervical condition and satisfied her burden at this interlocutory stage. Her request for relief is granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. Sitters or its workers' compensation carrier shall provide Ms. Owens with a panel of orthopedic surgeons for treatment, including surgery, of the June 9, 2015 cervical injury. Ms. Owens or the providers shall furnish bills for the charges incurred for compensable care to Sitters or its carrier, who shall timely pay the charges.

2. This matter is set for a **Status Hearing** on **May 10, 2018, at 10:00 a.m.**, Eastern Time. The parties must call 423-634-0164 or toll-free at 855-383-0001 to participate. Failure to call may result in a determination of the issues without the parties' participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry

4

of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2017). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED March 12, 2018.**

**JUDGE AUDREY A. HEADRICK**
**Court of Workers' Compensation Claims**

5

## APPENDIX

Exhibits:
1. First Report
2. Panel
3. Wage Statement
4. Deposition of Sheila D. Owens
5. Deposition of Rickey Hutcheson, D.O.
6. Deposition of Robert Daniel Mastey, M.D.
7. Deposition of Richard G. Pearce, M.D.
8. Deposition of Jay E. Jolley, M.D.
9. Billing statements:
    a. Parkridge Medical Center;
    b. SE Tennessee Emergency Physicians, PLLC;
    c. Chattanooga Ear, Nose & Throat; and,
    d. Diagnostic Center
10. Medical Records of Sheila Owens

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motion for Medical Treatment
4. Motion to Quash Notice of Deposition of Sheila D. Owens
5. Defendant's Response to Plaintiff's Motion for Medical Treatment
6. Defendant's Response to Plaintiff's Motion to Quash Notice of Deposition of Sheila Owens
7. Order Denying Motion to Quash Notice of Deposition
8. Notice of Deposition (Sheila Owens)
9. Show Cause Order
10. Request for Expedited Hearing
11. Employer's Response to Show Cause Order
12. Employee's Reply to Employer's Response to Show Cause Order
13. Order on Show Cause Hearing
14. Employer's Motion for Attorney Fees
15. Employer's Motion for Extension of Time
16. Notice of Deposition (Dr. Jolley)
17. Notice to Take the Deposition of Dr. Richard G. Pearce
18. Order Denying Employer's Motion for Attorney Fee
19. Order Granting Employer's Motion for Extension of Time
20. Employer's Response to Employee's Request for Expedited Hearing
21. Notice of Filing (Deposition of Dr. Hutcheson)
22. Notice of Filing (Deposition of Dr. Mastey)
23. Notice of Filing (Deposition of Ms. Owens)

6

24. Notice of Filing (Deposition of Dr. Pearce)
25. Notice of Filing (Deposition of Dr. Jolley)
26. Docketing Notice for On-The-Record Determination
27. Joint Notice of Filing Medical Records of Sheila Owens

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on March 12, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| Ronald J. Berke, Employee Attorney | | | X | ronnie@berkeattys.com margo@berkeattys.com |
| Charles E. Pierce, Employer Attorney | | | X | cepierce@mijs.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

w/permission

7